IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 30, 2011

# JEFFERY RATLIFF A/K/A/ JEFFERY ABSHER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Sullivan County**
**No. C56651      Robert H. Montgomery, Jr., Judge**

---

**No. E2011-00133-CCA-R3-PC - Filed April 19, 2012**

---

The petitioner, Jeffery Ratliff, appeals the Sullivan County Circuit Court's denial of his petition for post-conviction relief. The petitioner stands convicted of six counts of rape of a child, six counts of incest, one count of especially aggravated sexual exploitation of a minor, and one count of aggravated sexual battery. He is currently serving an effective sentence of one hundred twelve years in the Department of Correction. On appeal, he contends that the post-conviction court erred in denying his petition because: (1) he was denied his right to the effective assistance of counsel; (2) his convictions violate the principle of double jeopardy; and (3) the State's Notice of Intent to Seek Enhanced Punishment failed to comply with statutory requirements. Following review of the record, we conclude that there was no error in the post-conviction court's decision and affirm the denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Myers N. Massengill, II, Bristol, Tennessee, for the appellant, Jeffery Ratliff aka Jeffery Absher.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; H. Greeley Wells, Jr., District Attorney General; and Barry P. Staubus, Deputy District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Procedural History**

The facts underlying the petitioner's multiple convictions, as recited by this court, in relevant part, on direct appeal, are as follows:

This case arose after authorities found a video tape, dated February 16, 2002, showing the [petitioner] and his wife engaged in various sexual acts with the minor victim, the [petitioner's] stepdaughter. Based on what was depicted in the video, the [petitioner] and his wife were charged with six counts of rape of a child, six counts of incest, one count of aggravated sexual battery, and one [count] of especially aggravated sexual exploitation of a minor. The [petitioner] was tried separately from his wife.

At the [petitioner's] trial, Officer Jeff Cassidy of the Sullivan County Sheriff's Department testified what while on duty on January 24, 2004, he received a call to investigate a report of a young boy walking alone along new Besonwell Road in Sullivan County at about 8:00 p.m. He said he arrived at the scene after Sergeant Jeff Parker had apprehended the boy and put him in a patrol car. Officer Cassidy said he identified the boy as L.R. and said L.R. was about eight years old. L.R. was dressed in jeans, a t-shirt, and shoes but was not wearing a coat, hat, or gloves even though the temperature was about thirty-two degrees. L.R. directed Officer Cassidy and Sergeant Parker to his house.

Officer Cassidy testified that as they pulled into the driveway, their headlights shined upon a girl running toward the back of the house. They walked to the back of the house and found the girl trying to hide behind a heat pump. They later identified the girl as the eleven-year old victim, K.R. Officer Cassidy said K.R. appeared to be nervous and scared and had a large bruise on her neck. When he asked her about the bruise, she just lowered her head and "looked shy about it." He seated K.R. in his patrol car, while L.R. remained in Sergeant Parker's car. He and Sergeant Parker then knocked on a side door of the home and were answered by Sherrie Ratliff, the [petitioner's] wife, who was not clothed and was holding an infant. Mrs. Ratliff told the officers to wait while she got dressed, but she came to the door a few minutes later and was still unclothed. She asked the officers if they found her son, and they informed her that they did.

Officer Cassidy testified that they had reason to believe that the

-2-

[petitioner] was in the house and asked Mrs. Ratliff if they could check the house for their safety. He described the house as not being very large, with three bedrooms, one bathroom, a living room, and a kitchen. He said he looked inside two bedrooms. He said he pulled down a ceiling door that led to the attic and saw the [petitioner] in a crouched position at the top of the folding stairs. He said that he also had occasion later to look into some of the bedrooms of the house and that he observed a pink vibrator and pornographic material in what appeared to be K.R.'s bedroom. Cassidy was able to determine that K.R. and L.R. were the children of Mrs. Ratliff and the stepchildren of the [petitioner] and that the [petitioner] and Mrs. Ratliff had two young children together.

Sherry Ramsey-Miller testified that she was formerly Detective Sherry Ramsey of the Sullivan County Sheriff's Department Child Abuse Investigations Division. On the evening of January 24, 2004, she responded to a call regarding an incident at the [petitioner's] house. When she arrived at the house at about 9:30 p.m., Parker and Cassidy were there. She said that at some point, Sarah McConnell, a Department of Children['s] Services (DCS) investigator also arrived. She said the following additional people were in the house: the [petitioner], Sherrie Ratliff, and the two infant children of the [petitioner] and Mrs. Ratliff. K.R. and L.R. were in the police cruisers when she arrived.

Ms. Ramsey-Miller testified that she interviewed K.R. alone in the house at some point in the evening. After interviewing K.R., she sought to interview the [petitioner] and Mrs. Ratliff. She said she advised Mrs. Ratliff of her rights and obtained a consent to search her home. In addition, she said that the [petitioner] agreed to go to the Kingsport Police Department for an interview. Ms. Ramsey-Miller said that before her interview with the [petitioner], she was present as Ms. McConnell and Sullivan County Sheriff's Detective Landon Bellamy advised the [petitioner] of his rights. She said the [petitioner] knowingly waived his rights and signed an advice of rights form. The [petitioner] also consented to a search of his residence and signed a consent to search form. The form was signed sometime after midnight on January 25, 2004. She said the [petitioner] told her that he and Mrs. Ratliff were married on June 17, 2000, that they had two children together, and that K.R. and L.R. were Mrs. Ratliff's children from another marriage. The [petitioner] identified K.R. as his stepdaughter.

Using a key given to her by the [petitioner], Ms. Ramsey-Miller and

other detectives conducted a search of the [petitioner's] house. She said they were looking for a videotape, which they found in a closet in the [petitioner's] and Mrs. Ratliff's bedroom. She said she took the tape with her to the Sullivan County Sheriff's office, where she viewed it in its entirety. She said she had watched it at least twenty times before the trial, including on the morning of the trial. She identified a copy of that videotape and testified that it was a true and exact copy of the tape that she found in the [petitioner's] bedroom. She identified the following people seen in the tape: the [petitioner], Mrs. Ratliff, K.R., and a child who was about one month old at the time. She said she could identify the [petitioner] by his face and his voice. She also heard K.R.'s and Mrs. Ratliff's names spoken in the video. She said the [petitioner] referred to himself as "daddy" in the video and referred to Mrs. Ratliff as "mommy." The tape was dated February 16, 2002.

On cross-examination, Ms. Ramsey-Miller acknowledged that she was not present when the videotape was made and that she did not know if any alterations were made to it before she found it. She said the videotape included a time and date stamp, and she acknowledged that since she found the tape, no one had checked the time and date stamp on the video recorder to ensure that the time and date on the video were accurate.

Ms. Ramsey-Miller testified that a transcript was prepared reflecting the audible portions of the video. She said that she reviewed the transcript while watching the video and that it was accurate. The jury was given copies of the transcript as an aid while they watched the videotape in its entirety.

The video shows three people, a man, a woman, and a younger female, engaged in various sex acts between 9:08 p.m. and 10:15 p.m. All three were fully unclothed, and at the beginning of the video, the woman is holding a small infant. The man's voice is audible throughout the video, and he refers to the girl by the victim's first name, the woman as "your mom," and himself as "daddy." The acts shown in the video include the girl and woman performing fellatio on the man at 9:15 and 9:32, the man touching the girl's genitalia at 9:45, the girl using a pink vibrator on the woman at 9:47, the girl performing cunnilingus on the woman at 9:48, and the girl performing fellatio on the man at 10:14 and 10:15. Many of these acts were preceded by the man giving the girl instructions on what to do.

Ms. Ramsey-Miller testified the bruise seen on K.R.'s neck on January 24, 2004, was a hickey. She said she knew this because the [petitioner] told

-4-

her that K.R. had a hickey on her neck. She said she asked the [petitioner] about the pink vibrator that was found in K.R.'s bedroom, and the [petitioner] told her the vibrator belonged to Mrs. Ratliff. Ms. Ramsey-Miller said the videotape showed a vibrator that was the same color, shape, and size as the one found in K.R.'s bedroom. Ms. Ramsey-Miller also identified a photograph of K.R. that was found during the search of the house. The photograph shows K.R. in her underwear holding a Polaroid videotape box.

*State v. Jeffery Ratliff*, No. E2006-01527-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Feb. 20, 2008), *perm. app. denied*, (Tenn., Aug. 25, 2008). Following the denial of his motion for new trial, the petitioner filed a direct appeal, raising the following issues for review: (1) whether the evidence was sufficient; (2) whether the court erred in failing to suppress the videotape; (3) whether the videotape was properly authenticated; and (4) whether it was error to allow a transcript of the videotape to be used by the jury. After review, a panel of this court affirmed the convictions. *Id*.

Thereafter, the petitioner filed a *pro se* petition for post-conviction relief, alleging multiple grounds. Following the appointment of counsel, an amended petition for relief was filed. Among other grounds, the petitioner specifically asserted that he was denied effective assistance of counsel, that double jeopardy principles were violated, and that the State's Notice of Intent to Seek Enhanced Punishment did not comply with statutory requirements. Subsequently, a hearing was held on the matter, at which the petitioner, trial counsel, and a jail employee were called to testify.

The petitioner took the stand and expressed great dissatisfaction with trial counsel, stating that trial counsel "had a[n] attitude toward" him. He stated that, early in the representation, he wrote a letter to the trial court asking that trial counsel be removed. However, after a hearing on the matter, the court refused to allow the removal. The petitioner testified that, after the letter was sent, the relationship between them further deteriorated. He stated that he only met with trial counsel approximately thirty minutes prior to trial, that trial counsel never visited him at the jail, and that he did not receive discovery materials till one week prior to trial. He also indicated that trial counsel never reviewed the materials with him at all, which was inappropriate since he was aware that the petitioner could not read or write well. The petitioner testified that trial counsel led him to believe that "everything was a big joke and [he would] be going home." The petitioner acknowledged that trial counsel had filed and argued a motion to suppress the tape, but he asserted that trial counsel didn't make much of an argument and that he himself could have done better.

The petitioner continued, stating that he had requested trial counsel to subpoena several witnesses to testify, including the victim whom he had the right to confront and

question. The petitioner also requested that Scott Haycraft be called because he had allegedly been engaging in sexual activity with both the victim and her mother, the co-defendant. He believed that Mr. Haycraft could testify that he was in fact the man in the video. The petitioner testified that he told trial counsel on the day of trial that Mr. Haycraft was the man in the video, but trial counsel did not move to continue the trial based upon this disclosure. The petitioner also requested that trial counsel call his brother and a pest control man as character witnesses. None of these witnesses were called at trial or sentencing.

The petitioner further faulted trial counsel for failing to object to the State's use of a felony theft conviction at sentencing which was not included in the State's Notice of Intent to Seek Enhanced Punishment. From the testimony and comments on the record, we surmise that the notice failed to include this conviction, although it was included in the pre-sentence report which was admitted into evidence without objection. While the petitioner acknowledged that this conviction was in fact accurate, he faulted the trial court for relying upon it in sentencing him as a Range II offender with respect to his incest convictions. He further acknowledged that he did have, in addition to the aforementioned felony conviction, two forgery felony convictions and "19 or 20" other misdemeanor convictions.

The petitioner also complained that trial counsel did not object to the testimony offered by police officers at trial regarding the circumstances in 2004, which led to the discovery of the videotape and his arrest. He contends that the testimony offered regarding the 2004 events, *i.e.*, his being found in the attic, that the victim had a hickey, etc., was irrelevant and prejudicial and "casts [him] in a dark light." The petitioner also complained that trial counsel convinced him not to testify, when he really wanted to do so. He acknowledged that he was questioned regarding this by the trial court, but contends he only responded that way because of trial counsel's advice. The petitioner also claimed that trial counsel refused his request for a speedy trial, refused to hire a forensic expert to examine the videotape, and refused to obtain a mental evaluation of the petitioner. Lastly, the petitioner asserted that his double jeopardy rights were violated because the acts which established the convictions were one continuous single act.

Lieutenant Lori Delp of the Sullivan County Sheriff's Department was also called to testify. She indicated that the jail visitor's log, which she maintained, showed that trial counsel did not ever sign in to visit the petitioner during his incarceration in the jail. However, she stated that attorneys routinely requested that prisoners be brought to holding cells near the courtroom for meetings, and that these meetings were not recorded in the log.

The final witness to testify at the hearing was trial counsel, who indicated that he was appointed to represent the petitioner. He acknowledged that the petitioner had in fact written to the trial court complaining about his representation. However, he indicated that these

claims were fairly common and that he harbored no ill-will toward the petitioner for making the assertion. According to trial counsel, he had no difficulty communicating with the petitioner with regard to this case, or the four other cases on which he was also representing the petitioner. Trial counsel testified that he received discovery early in the case and reviewed it with the petitioner. After receiving an offer from the State of one hundred years, trial counsel testified that he was aware that this was a case which would go to trial.

Trial counsel further testified that the State included the victim's statements in the discovery packet at his request because it was unlikely that he would be able to interview her because her foster parents would not allow it. Trial counsel stated that he reviewed the statements and found nothing exculpatory in them whatsoever, as the victim maintained in each statement that the petitioner had videotaped, penetrated, and inappropriately touched her. Based upon these facts, trial counsel did not feel it appropriate to subpoena the witness to testify. However, he did argue in closing, because the State also did not call the victim, that the State had failed to secure a positive identification in the courtroom.

Trial counsel testified that he filed numerous motions, including a motion to suppress the videotape. According to trial counsel, the motion to suppress was "everything" in this case. He believed that the jury would not focus on other evidence presented after having seen the videotape which clearly depicted the petitioner's face.

Trial counsel acknowledged that he probably did not visit with the petitioner in the jail setting. Rather, he indicated that it was his practice to meet with his clients in the holding cells near the courtroom because it was less time consuming, safer, and provided an atmosphere for better communication. Trial counsel disagreed with the petitioner's estimate of the time they spent together and specifically stated that he felt he had spent adequate time meeting with the petitioner, explaining the allegations, and reviewing discovery. Trial counsel also testified that he spent time discussing the motion to suppress with the petitioner and that the petitioner was aware that the videotape was "[a]bsolutely, 100% devastating." Trial counsel further stated that he did an investigation in the case, including meeting with the detective and reviewing the videotape. He also stated that the petitioner refused to watch the videotape at all, even when asked to do so in order to help determine a strategy. Trial counsel indicated that he did not recall the petitioner giving him a list of possible witnesses for trial or sentencing.

Trial counsel stated that it was only on the day of trial when the petitioner indicated to him that there was another male present when the videotape was produced. However, in contradiction to the petitioner's testimony, trial counsel stated that the petitioner adamantly refused to disclose the identity of the other person. Trial counsel testified that he was aware of a person named "Dale," whom the victim had indicated that she had sex with on another

occasion. However, trial counsel had seen photographs of "Dale" and saw no resemblance between the petitioner and him. Therefore, as the petitioner refused to disclose the identity of the alleged other party, trial counsel felt he had no grounds to move for a continuance.

Trial counsel stated that the petitioner had informed him almost immediately that he did not wish to testify and that he had "never wavered" in that aspect. It was the petitioner's decision, and trial counsel felt it was knowingly and freely made.

Trial counsel asserted that he felt there were no grounds to object to the videotape admission on hearsay grounds, although he did object to the admission of the transcript of the tape. With regard to the double jeopardy issue raised by the petitioner, trial counsel stated that he saw no grounds for objection, as the videotape, which was time stamped, established separate and distinct acts for each charged offense. With regard to the Notice to Seek Enhanced Punishment, trial counsel testified that it probably was error not to object, but that it was harmless and did not actually affect the sentence. Trial counsel continued and stated that, in his opinion, there was no credible mitigating evidence available to him to present at sentencing. He testified that he could not recall the petitioner ever specifically mentioning any character witnesses he wanted to be called.

After hearing the evidence presented, the post-conviction court made findings from the bench, and later issued a written order, denying relief. The petitioner has now appealed that decision.

## Analysis

In his challenge to the denial of his petition for post-conviction relief, the petitioner has asserted three grounds as error: (1) that he was denied his right to the effective assistance of counsel; (2) that double jeopardy was violated by his multiple convictions; and (3) that the State's Notice of Intent to Seek Enhanced Punishment failed to comply with the statutory requirements.

### I. Ineffective Assistance of Counsel

First, the petitioner contends that the post-conviction court erred in determining that he was not denied his right to effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to meet with the petitioner sufficiently to prepare for trial; (2) failing to provide discovery to petitioner until the week before trial, and failing to adequately discuss and explain the material; (3) failing to call witnesses which the petitioner requested, including the victim, his wife, Scott Haycraft, and Dale Robinson; (4) failing to file for a speedy trial; (5) failing to object to multiple offerings of evidence which

were prejudicial and irrelevant, *i.e.*, the circumstances surrounding the discovery of the videotape in 2004; (6) failing to present mitigating evidence in the sentencing phase; and (7) failing to object to a prior conviction offered by the State being used to enhance the petitioner's sentence. He further contends that the cumulative effect of these errors "amounts to more than mere harmless error."

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland,* 466 U.S. at 687-88 (1984). Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 687-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding." *Adkins v. State*, 911 S.W.2d 334, 347

(Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings *de novo* with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Following review of the record, we find nothing in the record which preponderates against the conclusions reached by the post-conviction court. With regard to the petitioner's first two allegations, time spent with the petitioner, preparedness, and review of discovery, the post-conviction court found:

> The record reflects that [trial counsel] is an experienced public defender. The record also reflects that, in this case, [trial counsel] filed for and received discovery in a timely manner and provided copies of the discovery to the petitioner. The record also reflects that [trial counsel] filed a motion to recuse and a motion for a bill of particulars.

> The petitioner was in the Sullivan County jail from the time of his arrest until his trial. Petitioner contends that because [trial counsel] never signed into the jail to meet with petitioner prior to trial, that he did not meet with [trial counsel].

However, the petitioner was in court on more than ten occasions with [trial counsel]. [Trial counsel] testified that on these occasions he would meet with the petitioner in the holding cell adjacent to the courtroom and discuss the case with petitioner.

In addition, even though the discovery rules did not require it, the [S]tate allowed [trial counsel] to review the statements of witnesses and potential witnesses, including the victim, prior to trial.

It is obvious from the fact that what appeared to be the petitioner's face could be seen on the video as the crimes were being committed that the key to the defense of the case was the suppression of the video. The record reflects that [trial counsel] properly filed and presented to the trial court the motion to suppress. The record reflects that the transcript of the suppression hearing contains 187 pages. At the suppression hearing, five witnesses testified for the [S]tate and 15 exhibits were filed. As a result of the suppression hearing, trial counsel had the opportunity to see and hear from many of the witnesses who testified at trial.

The Court accredits [trial counsel's] testimony that he met with petitioner on numerous occasions and discussed the discovery and trial strategy with the petitioner and that [trial counsel] was adequately prepared for trial.

Again, the record before us amply supports these conclusions. Trial counsel testified that he met with the petitioner numerous times prior to trial in a holding cell, rather than going to the jail. He specifically stated that he felt that he had spent sufficient time with the petitioner and was adequately prepared for the trial. Trial counsel further stated that he received all discovery materials from the State, even asking for additional materials not required to be shared, and reviewed this information with the petitioner. Trial counsel stated that he believed that the petitioner understood the charges which he was facing and the alternatives available to pursue at trial. He acknowledged that the State's case was incredibly strong, given the failure to secure suppression of the videotape, but felt he had presented the best defense possible. The post-conviction court specifically accredited trial counsel's testimony, and we will not reweigh that determination on appeal. *See Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The petitioner has failed to establish this claim.

Next, with regard to the failure to call certain witnesses to testify at trial, the petitioner has again failed to meet his burden. Trial counsel gave testimony which showed that valid trial strategies supported his decision not to call the victim, his co-defendant, or the two men who had allegedly also had sexual relations with the victim. Trial counsel specifically

testified that he had reviewed the statements of the victim prior to trial and that her statements never deviated. He believed that nothing could be gained from having her testify. With regard to the co-defendant, trial counsel testified that he had spoken with her attorney and learned that, if called to testify, the co-defendant would invoke her Fifth Amendment rights. Moreover, he was aware that she had also given a statement acknowledging her guilt and implicating the petitioner. Nothing in the record preponderates against the post-conviction court's findings that trial counsel's decision not to call certain witnesses was "appropriate trial strategy and was not ineffective assistance of counsel."

Regardless of deficient performance, however, the petitioner has clearly failed to establish prejudice with regard to this assertion. He failed to present the testimony of any of these witnesses at the post-conviction hearing. Thus, a finding of prejudice is precluded. *See Black*, 794 S.W.2d at 757-58.

With regard to the claim regarding a speedy trial, the petitioner has waived review based upon his failure to include argument supporting his claim pursuant to Rule 10, Rules of the Court of Criminal Appeals. Indeed, the petitioner's entire reference to this issue in his brief is one sentence: "[The Petitioner] contends [trial counsel] was ineffective for failing to file for a speedy trial." Absent argument or supporting proof, we will not review the claim.

Regarding the failure to object to certain "irrelevant/prejudicial" information, the petitioner has again failed to establish his claim. The post-conviction court found:

> The Court has reviewed the list and does not find that even if trial counsel had objected on any of these evidentiary issues either at trial or pre-trial as suggested by petitioner's [post-conviction] counsel, there is no evidence in the record that [the] trial outcome would have been any different.

> Petitioner has failed to show by clear and convincing evidence that trial counsel was deficient in his performance at trial with regard to the alleged "irrelevant/prejudicial evidence."

Following review, we must agree with the post-conviction court's conclusions. From what we glean, the petitioner's post-conviction counsel merely reviewed the trial transcript and, after the fact, concluded that objections should have been made to certain testimony and exhibits offered at trial because they "cast the petitioner in a dark light" and contributed to the jury's determination. Trial counsel testified that most of the complained of instances were entered by the State in order to show how the videotape came to be in its possession, a valid requirement at trial. The petitioner has not established the inadmissability of these statements or exhibits so, accordingly, he has failed to show deficiency. Moreover, the

-12-

petitioner has offered no proof as to how this information actually resulted in prejudice in light of the overwhelming evidence of guilt contained in the videotape, which clearly shows his face and depicts the entire event. The fact that the petitioner was found hiding in the attic or that the victim had a hickey some two years after the charged events would seem to have little influence in light of the tape. The petitioner is entitled to no relief.

Again, with regard to his claim regarding mitigation evidence at sentencing, specifically character witnesses, the petitioner has again failed to establish prejudice based upon his failure to present any such witness at the post-conviction hearing. *See id*. Moreover, trial counsel testified at the hearing that he had researched the issue and found no credible mitigation evidence to present to the court during sentencing. No relief is warranted.

Lastly, the petitioner faults trial counsel for failing to object to the use of a prior conviction, not listed in the Notice of Intent to Seek Enhanced Punishment, to enhance his sentence. The post-conviction court stated:

> While trial counsel may have been ineffective for his failure to challenge the use of the felony theft at the sentencing hearing or on appeal, the petitioner has failed to show . . . any way that his 112 year sentence would have been any different had the use of the felony theft conviction by the sentencing court . . . been challenged by trial counsel.

Again, we agree prejudice has not been established. Even assuming trial counsel had objected to the use of the felony theft conviction, the pre-sentence report listed two other felony convictions which would have supported the imposition of the Range II status on the incest convictions. The petitioner now contends that only one of those could be used because they occurred within twenty-four hours of each other. However, he failed to present clear and convincing evidence of this claim at the post-conviction hearing. Moreover, with regard to the imposition of consecutive sentencing, the record is more than replete with other evidence, absent this conviction, to support the sentencing court's discretionary decision to order consecutive sentencing. Finally, we note that the challenged sentences were ordered to be served concurrently with other, longer sentences, *i.e.,* twelve years for the incest convictions concurrently with the twenty-five years for each rape of a child conviction. The petitioner is entitled to no relief.

Finally, the petitioner has asserted that the cumulative errors which occurred were not "harmless" and deprived him of a constitutional right. However, based upon our above analysis, we find this argument without merit.

## II.  Double Jeopardy

Next, the petitioner contends that the post-conviction court erred in denying his petition because "the events for which he was convicted constituted a 'single' criminal episode involving a 'single' criminal intent," and multiple resulting convictions violate the constitutional provisions against double jeopardy. We glean from the petitioner's argument that he is not challenging the different types of convictions, *i.e.* rape versus incest, but rather the multiple counts of each.[1] When addressing these type of challenges, "courts must determine what the legislature intended to be a single unit of conduct for purposes of a single conviction and punishment." *State v. Nigel Kavic Watkins*, No. M2009-00348-SC-R11-CD (citations omitted).

The petitioner is correct that the United States Supreme Court has defined the double jeopardy clause to afford protection, among other grounds, "against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Multiplicity deals with the division of conduct into discrete offenses, which create several offenses out of a single offense. *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996). In support of his argument, the petitioner relies upon *Phillips*, in which the court concluded that there was no double jeopardy violation caused by the three separate aggravated rape convictions based upon the three-hour time frame over which the acts occurred and the various distinct acts performed. *Id*. at 664-65. The court proffered several factors to consider for future cases:

1. The nature of the act;
2. The area of the victim's body invaded by the sexually assaultive behavior;
3. The time elapsed between the discrete conduct;
4. The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and
5. The cumulative punishment.

*Id*. at 665. The petitioner attempts to distinguish the facts of his case from those in *Phillips* based upon the fact that the entire episode lasted only one hour and ten minutes, all actions occurred in the same room, and four of the separately charged acts took place only one minute apart from each other.

An initial issue raised by the State is that of waiver. The State asserts that, by failing

---

[1] If the petitioner had raised that type of challenge, his argument would also fail. In the just released case of *State v. Nigel Kavic Watkins*, our supreme court set forth a new standard to follow in determining whether multiple convictions under different statutes violate the constitutional double jeopardy prohibition against multiple punishment. ___ S.W.3d ___, No. M2009-00348-SC-R11-CD (Tenn., Mar. 9, 2012). Under the announced test, the convictions in this case do arise from the same act or transaction, have different statutory elements, and are not lesser-included offenses of each other. *See id*.

-14-

to raise the claim on direct appeal, the petitioner has waived review of the issue. Under Tennessee Code Annotated section 40-30-106(g), a claim is waived if it could have been but was not presented in any proceeding before a court of competent jurisdiction. We must agree with the State that the petitioner has failed to articulate any reason why this claim could not have been raised in the initial direct appeal of the convictions. As such, the petitioner has indeed waived review of the issue. *See Le Tonio Swader v. State*, No. M2008-01021-CCA-R3-PC (Tenn. Crim. App., at Nashville, Oct. 7, 2009) ("The failure to present the double jeopardy claim for determination in a proceeding before a court of competent jurisdiction in which the claim could have been presented waived the claim for post-conviction purposes.").

Regardless, our review of the record reveals that the petitioner would be entitled to no relief on this issue. Each of the convictions is supported by separate and distinct acts, *i.e.* separate and different penetrations, which were recorded on a time-stamped video. Moreover, each of these times was distinctly noted in the indictment and the bill of particulars. As such, we must conclude that, under these circumstances, it was not error for the post-conviction court to conclude that each offense was a separate and discrete act, rather than one single continuous event.

## III. Notice of Intent to Seek Enhanced Punishment

Finally, the petitioner complains that the post-conviction court erred by failing to find that the State's Notice of Intent to Seek Enhanced Punishment failed to comply with the statutory notice requirement. The petitioner cites the correct law, which states that "[i]f the district attorney general intends to seek an enhanced punishment as a multiple, persistent, or career offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial." Tenn. R. Crim. P. 12.3(a); *see also* T.C.A. § 40-35-202(a). Further, "[t]he statement . . . must set forth the nature of the prior felony conviction, the dates of the convictions and the identity of the courts of the convictions." T.C.A. § 40-35-202(a).

In this case, the petitioner contends that the notice filed by the State was statutorily deficient because it did not include the petitioner's prior conviction for felony theft over $1,000. However, apparently that conviction was included in the pre-sentence report and was used by the trial court at sentencing to place the petitioner in the Range II category for his incest convictions. The petitioner further alleges that the conviction was considered in the determination of whether to impose consecutive sentencing.

As the State again points out, the petitioner has waived this issue by failing to raise it in his direct appeal. *See* T.C.A. § 40-30-106(f). Moreover, we are somewhat hard-pressed to understand how this alleged error would rise to the level of an abridgement of a constitutional right. By the petitioner's own argument, he contends only that the notice did

not comply with *statutory* requirements, not constitutional requirements.

Regardless, as found by the post-conviction court, even if the alleged notice was not in compliance with the statutory requirements, the petitioner failed to establish that prejudice resulted. The post-conviction court noted on the record that the sentences imposed as Range II sentences, those for incest, were all ordered to be served concurrently with those for rape, which were much longer sentences. Furthermore, the court noted that the petitioner's argument with regard to considering those convictions for consecutive sentencing also failed to establish prejudice because the petitioner had more than twenty other convictions to establish prior criminal history and because the trial court also based imposition of consecutive sentencing on the impact to the victim, a completely separate basis. The petitioner is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE